Affirmed and Opinion filed August 7, 2007








Affirmed and Opinion filed August 7, 2007.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00451-CR

____________

 

PAUL J. STAUTZENBERGER, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the County
Court

Colorado County, Texas

Trial Court Cause No. 18,910

 



 

O P I N I O N








Appellant, Paul Joseph Stautzenberger, appeals his
conviction after a bench trial of the Class B Misdemeanor offense of driving
while license invalid.  Tex. Transp.
Code Ann. ' 521.457 (Vernon 2007).  The trial court found
appellant guilty and assessed his punishment at 30 days in jail and a $500
fine.  Appellant, who represented himself, pro se, both at trial and on appeal,
presents five points of error: (1) the evidence is legally insufficient to
support his conviction; (2) the trial court erred in allowing the State to
amend the information after it had rested its case; (3) the trial court erred
in admitting State=s exhibit #2 where evidence showed it was
invalid on its face; (4) the trial court erred in sustaining the State=s objection to
questioning a witness regarding a specific element of the crime; and (5)
appellant was subjected to double jeopardy by levying a second fine not
included in the original sentence.  We affirm.

On September 11, 2005, Trooper Wayne Pierce of the Texas
Department of Public Safety stopped appellant for exceeding the posted speed
limit.  Pierce requested appellant produce his license and insurance. 
Appellant was unable to produce his license, claiming it had expired in 1997. 
When asked why he did not have a driver=s license,
appellant told Pierce he did not Abelieve in the
validity of a Texas driver=s license.@  He did, however,
give Pierce his name and date of birth.  Pierce transmitted this information by
radio and was informed appellant=s license had been
suspended on December 8, 2004.  Appellant was arrested and subsequently
convicted of driving while license invalid.

In his first point
of error, appellant contends the evidence is insufficient to support his
conviction because the State failed to present any evidence that (1) he was
driving a motor vehicle, (2) upon a highway, (3) while his license was
suspended.  Tex. Transp. Code Ann.
' 521.457(a)(2).[1] 
Appellant=s first contention is utterly frivolous.  Trooper
Pierce testified that appellant was driving a motor vehicle:

Q.      What unusual thing did you observe?

A.      Approximately 3:05 as I was traveling west
on Highway 71 I observed a white Ford Ranger traveling east above the posted
speed limit of 70.  Verified it with radar.








Q.      What type of vehicle was that?

A.      White Ford Ranger.

Q.      Is that a motor vehicle?

A.      Yes.

On
cross-examination, appellant posited his defense on the following line of
questioning:

Q.      [You] stated that I intentionally or
knowingly operated a motor vehicle.  You talked about a white Ford Ranger.

It may sound silly, but can you tell me how do you
know that that is a motor vehicle?

A.      It=s registered under the Transportation Code.  It has four
wheels, a motor, engine, everything to meet the criteria of a motor vehicle.

Q.      Did you see a motor?

A.      Just knowing that it [was] there.

Q.      You just
knew it had a motor?  Okay.

We agree with appellant=s characterization
of his defensive theory as Asilly.@  We take judicial
notice that a Awhite Ford Ranger,@ moving at 78
miles per hour, on a public road in Colorado County is, in fact, a Amotor vehicle.@  See Lee v.
State, 168 Tex. Crim. 348, 327 S.W.2d 582, 583 (1959) (holding the court
could take judicial notice that a Ayellow Dodge
pickup@ was a Amotor vehicle@).








Appellant also asserts the State failed to prove he was
driving on a Apublic highway.@  Trooper Pierce,
however, unequivocally testified that he observed appellant driving on Highway
71, a public highway.  The term Ahighway@ is defined in the
Transportation Code as Aa street, alley, or public place or square
that is dedicated to public use,@ but such
definition is not applicable to Chapter 521.  See Tex. Transp. Code Ann. ' 312.001 (Vernon
1999) ( limiting the applicability of the definition to Subchapters B and C of
Chapter 312).  Unless the legislature has specifically defined a statutory
term, words used in a statute are to be understood in their ordinary usage.  Oler
v. State, 998 S.W.2d 363, 368 (Tex. App.CDallas 1999, pet.
ref=d).  In common
usage, the term Ahighway@ means Aa road or way on
land or water that is open to public use as a matter of right whether or not a
thoroughfare.@  Webster=s Third New International
Dictionary 1069 (1993).  Again, we take judicial notice that State Highway 71 is
a Ahighway@ that runs
approximately 253 miles beginning near Brady in the north and ending near
Blessing in the south.

Finally, appellant claims his license expired in 1997, and
the State failed to prove that his license was suspended at the time of the
alleged offense.  If, as appellant contends, his license expired in 1997 and
was not thereafter renewed, he cannot be convicted of driving while his license
was suspended because he had no license that was in a state of suspension.  See
Bryant v. State, 163 Tex. Crim. 544, 545, 294 S.W.2d 819, 819 (1956)
(holding where defendant=s license expired and had not been
renewed, the evidence was legally insufficient to support a subsequent
conviction for driving while license suspended).

However, appellant was not charged solely with driving
while license suspended.  Rather, appellant was charged, in a single paragraph,
with three distinct manner and means of driving while license invalid, i.e.,
(1) driving after his license had been cancelled; (2) driving during a period
when his license had been suspended or revoked; and (3) driving while his
license was expired and the license expired during a period of suspension.  Tex. Transp. Code Ann. ' 521.457(a)(1),
(2) & (3).  We note that it is proper for the State to plead alternative Amanner or means@ in the
conjunctive when proof of any one Amanner or means@ will support a
guilty verdict.  Johnson v. State, 187 S.W.3d 591, 604 (Tex. App.CHouston [14th
Dist.] 2006, pet. ref=d).  Thus, a conviction may lawfully be
had through proof of only one of the alternative means alleged for committing
the offense.  Price v. State, 59 S.W.3d 297, 301 (Tex. App.CFort Worth 2001,
pet. ref=d).  Accordingly,
the evidence is sufficient here if the State proved appellant was driving while
his license was cancelled, suspended, revoked, or expired (if the license
expired during a period of suspension).

In an attempt to meet its burden of proof, the State
introduced a certified copy of appellant=s driving history
into evidence.  The record reflects:

 











 
 
 
  
  
 
 
  
  
 
 
 
 
 
  
 6/26/1986
 
 
  
 appellant issued a Texas driver=s license scheduled to expire on
 3/24/1997
 
 
 
 
  
 6/18/1996
 
 
  
 appellant=s driver=s license suspended until
 9/15/1996 for refusing to submit to a blood/urine test
 
 
 
 
  
 11/26/1996
 
 
  
 cited for driving without liability insurance (convicted
 1/6/1999)
 
 
 
 
  
 2/24/1997
 
 
  
 cited for driving without liability insurance (convicted
 2/12/1998)
 
 
 
 
  
 4/18/1997
 
 
  
 cited for driving without liability insurance (convicted
 10/23/1997)
 
 
 
 
  
 6/28/1997
 
 
  
 cited for driving without liability insurance (convicted
 8/5/1997)
 
 
 
 
  
 7/4/1997
 
 
  
 cited for driving without liability insurance (convicted
 10/23/1997)
 
 
 
 
  
 9/1/1997
 
 
  
 cited for driving while license suspended (convicted
 3/2/1998)
 
 
 
 
  
 10/17/2003
 11/3/2004
  
 12/8/2004
 
 
  
 cited for driving without a license (convicted
 10/17/2003)
 notified by mail of surcharge assessed due to conviction
 for driving without a license
 driver=s license suspended for failure to pay license surcharge
 
 




Thus,
appellant=s driver=s license was
scheduled by its own terms to expire on March 24, 1997.  Nine months before his
license was scheduled to expire, appellant=s license was
suspended for 90 days for refusing to submit to a blood or urine test.  See
Tex. Transp. Code Ann. ' 724.035(a)(1)
(Vernon 1999).[2] 
In such case, the legislature has provided that a license suspended for failure
to provide a specimen Amay not be reinstated . . . until the
person whose license has been suspended pays to the department a fee of $100.@  Tex. Transp. Code Ann. ' 724.046(a)
(Vernon 1999).[3] 
Here, there is no evidence to suggest appellant ever paid the $100 fee or that
his license was reinstated.








Because there is no evidence that appellant paid the
reinstatement fee, the question then arises as to whether appellant=s license has
remained in a state of perpetual suspension since June 18, 1996.  The Court of
Criminal Appeals addressed this very issue in Allen v. State, 48 S.W.3d
775 (Tex. Crim. App. 2001). There the court held that rather than being in a
state of indefinite suspension, a person whose license is suspended must pay
the reinstatement fee before the expiration of his period of suspension or
immediately lose his license.  Id. at 777.  In other words, if the
person does not timely pay the reinstatement fee, he takes on the status of an
unlicensed driver.  The court did not ascribe a name to this phenomenon, but it
is difficult to characterize this event as anything other than a Arevocation@ of the license.[4] 
Certainly, the license cannot be said to have Aexpired@ by its own terms.

 The term Arevocation@ is not defined in
Chapter 521 of the Transportation Code.  While specific examples of Arevocation@ may be found in
Chapter 521,[5]
the legislature has not suggested these examples constitute an exclusive list
of how a license may be revoked.  Section 521.457(a)(2) makes it an offense for
a person to operate a motor vehicle on a highway after his license has been
revoked Aunder any law of
this state.@  Tex. Transp.
Code Ann. ' 521.457(a)(2).  Because the record shows
appellant lost his license before it expired, we find the evidence legally
sufficient to show appellant was driving after his license had been revoked. 
Accordingly, the evidence is legally sufficient to support his conviction of
driving while license invalid.  Appellant=s first point of
error is overruled.

In his second point of error, appellant contends the trial
court erred in permitting the State to modify the information during closing
argument after the State had rested its case.  The information contained an
enhancement paragraph that alleged the existence of a previous conviction for
driving while his license was suspended.  The State offered no evidence in
support of the enhancement paragraph and affirmatively abandoned the
allegation.








AAn . . . information may not be amended
over the defendant=s objection as to form or substance if the
amended . . . information charges the defendant with an additional or different
offense or if the substantial rights of the defendant are prejudiced.   Tex. Code Crim. Proc. Ann. art.
28.10(c) (Vernon 2006).  However, a Adifferent offense@ means a different
statutory offense.  Flowers v. State, 815 S.W.2d 724, 728 (Tex.
Crim. App. 1991). Thus, an amendment to an information is a change that affects
the substance of the information.  An enhancement paragraph is not part of the
State=s case-in-chief
and it is not part of the Asubstance@ of an indictment
or information.  In fact, enhancement allegations need not be pled on the face
of the charging instrument.  Johnson v. State, 214 S.W.3d 157, 158 (Tex.
App.CAmarillo 2007, no
pet.).  As such, enhancement allegations are mere surplusage.  Id.  The
abandonment of surplusage does not invoke the requirements of Article 28.10 (c)
of the Code of Criminal Procedure.  Chavis v. State, 177 S.W.3d 308, 311
(Tex. App.CHouston [1st Dist.] 2005, pet. ref=d).  Thus, the
State may, with the permission of the trial court, abandon an enhancement
paragraph.  Hall v. State, 862 S.W.2d 710, 714 (Tex. App.CBeaumont 1993, no
pet.).      Appellant=s second point of error is without merit
and overruled.








In his third point of error, appellant makes a collateral
attack upon one of his previous convictions, i.e., the judgment of a trial
court in Comal County that he claims violated the double jeopardy provisions of
the Texas Constitution by imposing a reinstatement fee that was not part of the
original sentence.  Appellant contends his failure to pay the unlawful
reinstatement fee in the Comal County case is the only basis for the continued
suspension that is the basis of the instant offense.  Appellant=s point is wholly
without merit because it constitutes an impermissible collateral attack.  Only
a void judgment may be collaterally attacked.  Henderson v. Chambers,
208 S.W.3d 546, 550 (Tex. App.CAustin 2006, no pet.).  A judgment is void
only when it is apparent that the court rendering judgment Ahad no
jurisdiction of the parties or property, no jurisdiction of the subject matter,
no jurisdiction to enter the particular judgment, or no capacity to act.@  Id. 
Moreover, this issue has been previously addressed and decided contrary to
appellant=s position.  In Ex parte Drake, 212 S.W.3d 825,
827 (Tex. App.CAustin 2006, pet. ref=d), the Third
Court of Appeals held a license surcharge or reinstatement fee is not a
criminal punishment in violation of the double jeopardy guarantee against
multiple punishments.  We agree.

Finally, in the case presented here, appellant=s conviction for
driving while license invalid does not rest solely on the theory that he was
driving while his license was suspended.  Rather, the evidence supports a
conviction for driving after his license was revoked.  Appellant=s third point of
error is overruled.

In his fourth point of error, appellant argues the trial
court erred in admitting State=s exhibit #2 into evidence when the
exhibit was invalid on its face.  The record reflects the State=s attorney offered
a certified copy of appellant=s driving history into evidence as State=s exhibit #2. 
Appellant expressly stated he had no objection to the exhibit.  To preserve an
issue for appeal, a party must timely object, stating the specific legal basis
for his objection.  Tex. R. App. P. 33.1(a)(1);
Batiste v. State, 217 S.W.3d 74, 81 (Tex. App.CHouston [1st
Dist.] 2006, no pet.).  Appellant=s fourth point of
error is overruled.

In his fifth point
of error, appellant contends the trial court erred when it sustained the
prosecutor=s objection when he asked Trooper Pierce how he Aknew the road to
be public.@  During his cross-examination of Trooper Pierce,
appellant posed the following question:

Q.  Again, it may sound a little odd.  I want to ask
the question, but then let me explain it because I want to be real clear.

My question is, how do you know that=s a public highway?

For the explanation, I wanted to know what a public
highway was, and I went and looked up and couldn=t find a definition for a public highway in the
Transportation Code.  But I did find that the legislature kind [of] moved that
around and they had decided to use the word Apublic road@ and said any time they called it Apublic road@ they meant Apublic highway@ too.  So, I knew that if I knew
what a public road was then I would know what a public highway was.

So, I looked for public roads and it described that
a public road or C








MS. OLSON [the State=s attorney]:  Your Honor, I=m going to object to him
testifying.  If he wants to ask the witness questions that would be fine.

THE COURT:  Sustained.

The
State did not object to the question Ahow do you know
that=s a public
highway.@  Rather, the
State objected to appellant=s rambling, side bar explanation for his
question.[6] 
The trial court should rigidly repress side bar remarks, and the State=s objection was
properly sustained.  Garrett v. State, 998 S.W.2d 307, 318 (Tex. App.CTexarkana 1999,
pet. ref=d).  Appellant=s fifth point of
error is overruled.








At the sentencing hearing, Judge Al Jamison said, AMr.
Stautzenberger, you=re playing with the system and I deeply
resent that.@  We agree.  Appellant has apparently been driving
without a valid driver=s license for the last decade, and Texas
jurisprudence is littered with his frivolous appeals.  It appears he has been
repeatedly convicted of such offenses as failing to display an operator=s license, failing
to maintain financial responsibility, operating an unregistered motor vehicle,
speeding, driving while intoxicated, driving without a license, and driving
while license invalid.[7] 
No penalty imposed thus far seems to have had any effect on appellant=s behavior.  To
the contrary, he openly avows the Texas driver=s license statutes
are invalid, and he has persuasively demonstrated his ability to continue
driving with relative impunity.  ALaws that cannot be enforced corrupt,@[8] and appellant has exposed a shocking
impotence on the part of this State to successfully enforce its driving
statutes.  Unless the legislature provides more stringent penalties for repeat
offenders in the Transportation Code, this scandalous parody will likely
continue.

The
trial court=s judgment is affirmed.  

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered and Opinion filed
August 7, 2007.

Panel consists of Chief Justice
Hedges and Justices Hudson and Guzman.  (Guzman, J., concurring in the result
only.)

Publish C Tex.
R. App. P. 47.2(b).

 









[1]  Section 521.457, driving while license invalid,
states, in pertinent part:

(a) A
person commits an offense if the person operates a motor vehicle on a highway:

(1) after
the person=s driver=s
license has been canceled under this chapter if the person does not have a
license that was subsequently issued under this chapter;

(2) during
a period that the person=s driver=s
license or privilege is suspended or revoked under any law of this state;

(3) while
the person=s driver=s
license is expired if the license expired during a period of suspension;  or

(4) after
renewal of the person=s driver=s
license has been denied under any law of this state, if the person does not
have a driver=s license subsequently issued under this chapter.

Tex. Transp. Code Ann. ' 521.457(a).





[2]  Section 724.035(a)(1) was amended in 2001 increasing
the period of suspension from 90 days to 180 days.  See Act of May 16,
2001, 77th Leg., R.S., ch. 444, '10,
2001 Tex. Gen. Laws 880.





[3]  Section 724.046 was amended in 2001 increasing the
fee from $100 to $125.  See Act of May 16, 2001, 77th Leg.,
R.S., ch. 444, '14, 2001 Tex. Gen. Laws 881.





[4]  A Revoke@ means Ato
annul by recalling or taking back.@ Webster=s Third New International
Dictionary 1994 (1993).





[5]   Revocation of a license may occur if a person who
is required to register as a sex offender fails to renew his driver=s license within 30 days after being released from a
penal institution or placed on community supervision.  Tex. Transp. Code Ann. '
521.348 (Vernon 2007).  Revocation may occur if a person is chemically
dependent or incapacitated.  Tex.
Transp. Code Ann. ' 521.319 (Vernon 2007).  Revocation may also occur if
a person is incapable of safely operating a motor vehicle or has failed to
provide medical records to the medical advisory board.  Tex. Transp. Code Ann. '
521.294 (Vernon 2007).  Here, the State offered no evidence that appellant=s license had ever been revoked. under any defined
statutory procedure.





[6]  Side bar remarks are remarks of counsel that are
neither questions to the witness nor comments addressed to the court.  Brokenberry
v. State, 853 S.W.2d 145, 152 (Tex. App.CHouston
[14th Dist.] 1993, pet. ref=d).





[7]  See Stautzenber v. State, No. 03-03-00598-CR,
2005 WL 1240693 (Tex. App.CAustin May 26,
2005, no pet.) (not designated for publication); Stautzenberger v. State,
No. 03-03-00410-CR, 2004 WL 1114493 (Tex. App.CAustin May 20, 2004, no pet.) (not designated for publication); Stautzenberger
v. State, No. 05-98-00711-CR, 1999 WL 993859 (Tex. App.CDallas Nov. 2, 1999, pet. ref=d) (not designated for publication); Stautzenberger
v. State, No. 05-97-00747-CR, 1998 WL 546149 (Tex. App.CDallas Aug. 27, 1998, no pet.) (not designated for
publication); Stautzenberger v. State, No. 03-96-00655-CR, 1997 WL
420999 (Tex. App.CAustin Jul. 24, 1997, no pet.) (not designated for
publication); Stautzenberger v. State, No. 03-97-00313-CR, 1997 WL 333447
(Tex. App.CAustin Jun. 19, 1997, no pet.) (not designated for
publication).





[8]  R. Clark,
Crime in America (1970), at 41.